UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MOHAN THAMPI,

                  Plaintiff,

vs.                        Case No.  2:04-cv-441-FtM-29SPC

COLLIER   COUNTY   BOARD   OF
COMMISSIONERS, as the body corporate
governing Collier County, and JAMES
MUDD  and  JAMES  DeLONY,  in  their
individual capacities,

                  Defendants.

_____

### OPINION AND ORDER

_____This matter comes before the Court on the following summary judgment motions: (1) Collier County's Motion for [Partial] Summary Judgment (Doc. #168); (2) Mohan Thampi's ("Thampi") Motion for Partial Summary Judgment (Doc. #183); and (3) Thampi's second Motion for Partial Summary Judgment (Doc. #271-1).  Both parties filed opposing Memoranda (Docs. #185, 194, 277, 294), and have submitted voluminous documents in support of their respective positions.  Also before the Court are: (1) Defendant James DeLony's Motion to Dismiss (Doc. #178), and (2) Defendant James Mudd's Motion to Dismiss (Doc. #181).  Plaintiff filed a consolidated memorandum (Doc. #188) opposing both motions.  Both individual defendants also filed summary judgment motions (Docs. #303, 305).

Plaintiff filed a Response (Doc. #313) in opposition to both motions.

The Court initially took the motions under advisement, and then allowed the parties to submit additional memoranda in light of Garcetti v. Ceballos, 126 S. Ct. 1951 (2006).  All parties filed multiple additional memoranda.  (Docs. #338, 340, 341, 342, 344, 345, 346, 348, 349, 350, 353, 354, 364, 365, 367.)  The Court directed plaintiff to file pinpoint citations to the record for each item of speech which plaintiff claims is protected, and correlate these citations to Paragraph 5(a)-(h) of his Amended Complaint.  (Doc. #359.)  Plaintiff filed his citations as directed.  (Doc. #363.)

## I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

At all relevant times plaintiff Mohan Thampi (Thampi) was a civil engineer who was employed by Collier County as a Senior Project Manager in the Public Utilities Engineering Division (PUED). Thampi's responsibilities included managing county projects involving water, sewer, and solid waste services. At the time the incidents in this case began, Thampi had been so employed with Collier County since October, 1996.

Plaintiff's original Complaint (Doc. #1) was filed on August 30, 2004. The operative pleading is plaintiff's Amended Complaint

(Doc. #134) which asserts, pursuant to 42. U.S.C. §§ 1983 and 1988, that defendants abrogated plaintiff's free speech rights under the First and Fourteenth Amendments.   Plaintiff asserts that he "exercised his First Amendment right of free speech by reporting to supervisors and criticizing waste and gross mismanagement of public funds, resources and projects in Collier County." (Doc. #134, ¶ 4.)  The Amended Complaint identifies seven categories of allegedly protected speech by plaintiff. (Doc. #134, ¶¶ (5(a)-(h).)  As a result of this speech, plaintiff alleges, he was subjected to disciplinary actions and was ultimately terminated at the direction of defendants James Mudd (Mudd) and James DeLony (DeLony)(Doc. #134, ¶ 5(c), 7).  Plaintiff alleges his termination was pursuant to Collier County Policy 5311.1(10), which states: "Employee's conduct toward co-workers, supervisors, other staff and the public shall remain courteous, positive and appropriate for the work situation."   (Doc. #134, ¶ 9.)   Plaintiff asserts that his discharge pursuant to this Policy was an effort to chill his free speech rights.  (Doc. #134, ¶ 11.)

The Amended Complaint asserts that (1) "Collier County Policy 5311(10) is unconstitutional on its face as overbroad or vague in that the regulation substantially reaches constitutionally protected speech or is imprecise and confusing as to its meaning" (Doc. #134, ¶¶ 12-13); (2) Collier County Policy 5311.1(10) is unconstitutional as applied to plaintiff (Doc. #134, ¶ 14); and (3) plaintiff did not receive a promotion in January, 2003, for which

he applied, and was terminated in March, 2004, in retaliation for the exercises of his right to free speech. (Doc. #134, ¶ 17.)

### III.

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To establish a claim under § 1983, plaintiff must allege and prove that (1) defendant deprived him of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law.  Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).  Plaintiff also must allege and prove an affirmative causal connection between defendant's conduct and the constitutional deprivation.  Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995).

Under § 1983, a local government may not be held liable under a theory of respondeat superior, but instead may only be held liable for the execution of an official governmental policy or custom.  Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).  Further, only government officers or groups who have final policymaking authority may subject the government entity to a §

1983 claim.  Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1312 (11th Cir. 2006).

**IV.**

The constitutional right at issue in this case is the First Amendment's right of free speech.  It is well-established that "[a] government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment."  City of San Diego v. Roe, 543 U.S. 77, 80 (2004).  "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  Garcetti, 126 S. Ct. at 1957 (citations omitted).  Accordingly, as a general matter, a government entity may not discipline a public employee in retaliation for protected speech.  Mitchell v. Hillsborough County, 468 F.3d 1276, 1283 (11th Cir. 2006); Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001).

"Although it is well-established that an employer may not discharge a public employee in retaliation for the employee's exercise of his right to freedom of speech, that right is not absolute."  Brochu v. City of Riviera Beach, 304 F.3d 1144, 1157 (11th Cir. 2002).  "The problem in any case is to arrive at a balance between the interests of the [employee] as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).  Because of this governmental

interest, "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." City of San Diego, 543 U.S. at 80.

The Supreme Court has directed that the four-step Pickering and Connick v. Myers, 461 U.S. 138 (1983) test be applied to claims that a public employee's First Amendment rights were violated for work-related speech. E.g., City of San Diego, 543 U.S. at 80; Brochu, 304 F.3d at 1157; Cook v. Gwinnett County Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005); McKinley v. Kaplan, 262 F.3d 1146, 1149-50 (11th Cir. 2001); Maggio v. Sipple, 211 F.3d 1346, 1351 (11th Cir. 2000). This test examines (1) whether the employee's speech is fairly characterized as constituting speech as a citizen on a matter of public concern, (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service, (3) whether the speech played a substantial part in the government's challenged employment decision, and (4) whether the government has shown by a preponderance of evidence that it would have made the same employment decision in the absence of the protected conduct. Battle v. Bd. of Regents, 468 F.3d 755, 759-60 (11th Cir. 2006); Chesser, 248 F.3d at 1122-23; Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1563-64 (11th Cir. 1995)(citing Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (11th Cir. 1989)). The first two elements of this test are "questions of law designed to

determine whether the employee's speech is protected by the First Amendment." Beckwith, 58 F.3d at 1564.  The final two elements are questions of fact "designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision." Id.  See also Battle, 468 F.3d at 760.

Thus, to establish that he was denied a promotion, was disciplined, and/or was fired in violation of the First Amendment, plaintiff must demonstrate: (1) that his speech was as a citizen addressing a matter of public concern; (2) that his interests as a citizen in commenting on the matters of public concern outweigh the legitimate interests of the County as an employer; and (3) that the speech played a substantial or motivating part in the County's decision not to promote, to discipline, and/or to fire him.  If plaintiff can establish all three elements, his claim will still fail if the County proves by a preponderance of the evidence that it would have fired him regardless of his speech.  Akins v. Fulton County, Ga., 420 F.3d 1293, 1303 (11th Cir. 2005); Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1282 (11th Cir. 2005).

**A.**

Collier County asserts that plaintiff is barred by *res judicata* or collateral estoppel principles from pursuing his First Amendment claims.  The County asserts that because plaintiff lost a challenge to his firing at a post-termination administrative

hearing, plaintiff may not bring a First Amendment action in court (Doc. #169, pp. 15-16).

"We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." Astoria Fed. Savings & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991).  However, "[a]lthough administrative estoppel is favored as a matter of general policy, its suitability may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures."  Solimino, 501 U.S. at 109-10.  Thus, collateral estoppel does not apply in the context of a suit brought under the age discrimination statute, Solimino, 501 U.S. at 110-11, or Title VII, University of Tenn. v. Elliott, 478 U.S. 788, 795 (1986), but can apply in a § 1983 lawsuit.  Allen v. McCurry, 449 U.S. 90, 103-05 (1980); Crapp v. City of Miami Beach, 242 F.3d 1017, 1022 (11th Cir. 2001); Vazquez v. Metropolitan Dade County, 968 F.2d 1101, 1106 (11th Cir. 1992).

In § 1983 cases, the court applies the state's law of collateral estoppel. Quinn, 330 F.3d at 1329 n.8.  "Under Florida law, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction."  Quinn, 330 F.3d at 1329.  The Eleventh Circuit gives preclusive effect to an administrative agency's fact-finding

when the agency acts in a judicial capacity and resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate, even when the fact-finding has not been reviewed by a state court. <u>Quinn</u>, 330 F.3d at 1328-29; <u>Travers v. Jones</u>, 323 F.3d 1294, 1296 (11th Cir.), <u>cert. denied</u>, 540 U.S. 984 (2003).[1]

Collier County argues that this case is similar to <u>Travers</u> and that plaintiff, represented by counsel, received a full and fair opportunity to present his case in an administrative hearing, and in fact presented witnesses and evidence and had the opportunity to testify and cross-examine witnesses. (Doc. #169, p. 15.) The Court agrees that the record in this case establishes that plaintiff received a full and fair opportunity to present his case in the administrative hearing.[2] This does not end the matter, however. Plaintiff argues that collateral estoppel is not satisfied because the administrative hearing (1) did not resolve the identical issues, and (2) was not between the same parties or their privies, as required by Florida law. In this regard <u>Travers</u> is not controlling because it applied Georgia law.

———————————

[1]Accordingly, the Court rejects plaintiff's argument that a fundamental requirement of preclusion law is that a court of competent jurisdiction reviewed the matter (Doc. #185, p. 3).

[2]The Court rejects plaintiff's arguments that an affidavit submitted by a hearing officer in subsequent litigation retroactively establishes that the administrative hearing was unfair or creates a new issue that would bar issue or claim preclusion that would otherwise apply. (Doc. #185, pp. 6-9.)

Florida collateral estoppel requires "that the issue in the second action that is sought to be estopped from relitigation be identical to necessary and material issues resolved in the first suit." Seaboard C. L. R. Co. v. Cox, 338 So. 2d 190, 191 (Fla. 1976). The record submitted does not establish that this requirement is satisfied.

The County first asserts that "Plaintiff admits he previously litigated his First Amendment retaliatory claims in a County administrative proceeding (see paragraph 8 of Doc. #134)." (Doc. #169, p. 15.) This is not accurate. Paragraph 8 of the Amended Complaint admits that plaintiff "unsuccessfully appealed post-termination his discharge by defendants," without addressing what specific issues were resolved.

The County also asserts that "Plaintiff litigated the issue of his retaliatory firing at his post-termination hearing." (Doc. #169, p. 15.) Plaintiff disagrees, arguing that the administrative hearing focused on retaliation under the Florida Whistleblower Act, questions of procedural due process, (Doc. #185, p. 2), and whether plaintiff's conducted violated official county policy, not on the constitutionality of that official policy (Doc. #185, p. 4). Plaintiff also asserts that the administrative hearing determined that plaintiff violated the county's official policy, but did not and could not determine the constitutionality of the policy (Doc. #185, p. 5).

It is clear that the administrative hearing did indeed involve First Amendment issues.  Plaintiff's counsel opened the hearing by stating that

> Mr. Thampi believes that he is being fired for an improper purpose and those improper purposes include exercising his rights under the Florida Whistle Blower's Act and also exercising his right to complain to his supervisors about things that he sees are going wrong in terms of waste of government funds to his supervisors, which, of course, is protected by the First Amendment. And I bring this up simply to make the point that no matter how much process he is given, no matter how many hearings he is given, that is irrelevant when the underlying purpose for the discharge is improper."

(Doc. #22, pp. 7-8.)  In closing, plaintiff's attorney stated that the past two years were an orchestrated attempt by new management to get rid of Mr. Thampi.  Plaintiff's attorney asserted that the record showed that Mr. Thampi has always complained when he thought there was waste, fraud and abuse in county contracting.  "[T]he new management didn't like that, and that's a violation of the law. It's a violation of the Florida Whistle Blower's Act.  It's a violation of the First Amendment of the Constitution and the remedies provided for that pursuant to 42 U.S.C., section 1983." (Doc. #22, p. 104.)

While plaintiff thus raised First Amendment issues in the administrative hearing, these issues were not resolved by the hearing officer.  The administrative hearing officer issued findings of fact and conclusions of law in a June 9, 2004 letter to the County (Doc. #168-7, attachment).  The hearing officer stated:

At the hearing, there appeared to be disagreement between counsel for the parties as to whether my findings about Mr. Thampi's performance should specifically address Mr. Thampi's allegations of retaliation, discrimination, and deprivation of due process.  The only guidance I have received concerning my scope of review is contained in CMA#5351B.4(c)(1), which states in relevant part that "[t]he County Manager or designee shall take action to ensure **all facts** in the matter are determined." (Emphasis added).  Without making any finding about whether the County's procedures require me to address Mr. Thampi's claims, I will address those claims for the sake of administrative economy and to the extent the County Manager may assign some value to the discussion.

Since the First Amendment discussion by the hearing officer was essentially *dicta*, the Court cannot find that the issues sought to be estopped are identical to necessary and material issues involved in the administrative hearing.  Therefore, the Court will not give the administrative hearing decision preclusive effect, and Summary Judgment on this basis is denied.[3]

**B.**

Both plaintiff and Collier County move for summary judgment as to the facial constitutionality of Collier County Policy 5311(10). As noted above, this policy provides:  "Employee's conduct toward co-workers, supervisors, other staff and the public shall remain courteous, positive and appropriate for the work situation."  The undersigned denied plaintiff's prior Motion for Partial Summary Judgment (Doc. #14) on the identical issue addressed to a prior

---

[3]The Court does reject plaintiff's second issue, and finds that the County was in privity to its employees in the administrative hearing.

version of the complaint.  <u>See</u> Opinion and Order, Doc. #71.  That Opinion and Order found that because the balancing test in the public-employment context considers more than just the language of the policy, "there is no viable independent claim which can challenge an employment policy as being unconstitutional on its face."  (Doc. #71, pp. 2-3.)

Collier County initially asserts that this Opinion and Order is the law of the case, and therefore cannot now be revisited or revised.  (Doc. #169, pp. 9-10.)  This is incorrect.  "Under the law of the case doctrine, both the district court and the appellate court are generally bound by a prior *appellate decision* of the same case."  <u>Jackson v. Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1283 (11th Cir. 2005)(emphasis added)(citing <u>Oladeinde v. City of Birmingham</u>, 230 F.3d 1275, 1288 (11th Cir. 2000)).  Indeed, Fed. R. Civ. P. 54(b) allows for the revision of such an Opinion and Order at any time before a judgment adjudicating all the claims and rights and liabilities of all parties.  Therefore, the Court will consider the issue in this new summary judgment context.

Plaintiff argues that contrary to the Court's prior decision, such a facial challenge claim does exist, but the <u>Pickering</u> balancing test is simply modified.  Plaintiff relies upon <u>United States v. Nat'l Treasury Emples. Union</u>, 513 U.S. 454 (1995)(<u>NTEU</u>) for the proposition that when a First Amendment facial challenge is made the government bears the greater burden of showing that the "interests of both potential audiences and a vast group of present

and future employees in a broad range of present and future expression are outweighed by that expression's necessary impact on the actual operation of government." (Doc. #184, p. 9.) According to plaintiff, this modified standard effectively drops the last two prongs of Pickering-Connick. Plaintiff also relies upon Hobbs v. Thompson, 448 F.2d 456, 460 (5th Cir. 1971)[4] as his only other binding authority.

The Court finds that plaintiff's reliance upon NTEU is misplaced. In NTEU the speech was unrelated to the employment, was not done on work time or in the workplace, and had no effect on the mission and purpose of the employer. None of these factors apply in plaintiff's case, and in such a situation the Supreme Court has held that the Pickering-Connick balancing test applies. Garcetti, 126 S. Ct. at 1957-59; City of San Diego v. Roe, 543 U.S. at 80. The Court also finds Hobbs inapplicable because it dealt with public employees' right to engage in political activities, not the free speech issues involved in this case. The Court continues to find that the Pickering-Connick balancing test precludes reliance upon only one factor, such as the content of a written policy, as a litmus test for a violation of a government employee's First Amendment right. A multi-factored approach continues to be the

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

course confirmed by the Supreme Court's recent decision in <u>Garcetti v. Ceballos</u>.

Plaintiff is correct, however, to the extent that the prior Opinion and Order was unnecessarily categorical. All that need be found is that there is no independent facial claim available to challenge a government policy in the public employment context where the speech is related to the employment. The effect of this holding is that neither side is entitled to summary judgment as to the facial constitutionality of Policy 5311(10) because there is no separate, independent claim stated. Both motions for summary judgment on this ground are denied.

### C.

Plaintiff and the County each assert that they are entitled to summary judgment on the first two steps of the <u>Pickering-Connick</u> test, which are issues of law to be resolved by the Court. Plaintiff asserts that all his speech involved matters of public concern and was therefore protected by the First Amendment, and that the balance tips in his favor as to each. Collier County asserts that none of plaintiff's speech involved matters of public concern and cannot form the basis for a First Amendment claim, and that in any event the balance tips in its favor as to all the speech.

The threshold issue is for the Court to determine whether plaintiff's speech is protected by the First Amendment. <u>Brochu v. City of Riviera Beach</u>, 304 F.3d 1144, 1157 (11th Cir. 2002). This

requires the court to determine "whether the employee spoke as a citizen on a matter of public concern." Garcetti, 126 S. Ct. at 1958. If the answer is no, there is no viable First Amendment claim; if the answer is yes, there may be a viable First Amendment claim. Garcetti, 126 S. Ct. at 1958. See also Battle, 468 F.3d at 760; Ferrara v. Mills, 781 F.2d 1508, 1512 (11th Cir. 1986)("If the employee's speech cannot fairly be characterized as constituting speech on a matter of public concern, the inquiry is at an end.") The burden of proof is upon plaintiff to demonstrate that his speech was as a citizen on a matter of public concern. Ferrara, 781 F.2d at 1514; Morales v. Stierheim, 848 F.2d 1145, 1148 n.4 (11th Cir. 1988).

Speech involves a matter of public concern, and therefore is entitled to First Amendment protection, only if it can fairly be considered as relating to a matter of political, social, or other concern to the community. Connick, 461 U.S. at 146; Akins, 420 F.3d at 1303. This "must be determined by the content, form, and context of a given statement, as revealed by the whole record." Mitchell v. Hillsborough County, 468 F.3d at 1283 (quoting Connick, 461 U.S. at 147-148). A court must be mindful that an employee's speech is rarely entirely private or public, and that it is the "main thrust" of the speech that must be determined. See Battle, 468 F.3d at 1283; Akins, 420 F.3d at 1303; Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993). The fact that the speech occurred at work and concerned the subject mater of plaintiff's employment are

-17-

not dispositive.   Garcetti, 126 S. Ct. at 1959.   Rather, the controlling factor in such circumstances is whether the expressions were made pursuant to the employee's official duties.   Garcetti, 126 S. Ct. at 1959-60.   See also Gonzalez v. Lee County Housing Auth., 161 F.3d 1290, 1296 n.22 (11th Cir. 1998).   In deciding whether an employee's speech touched on a matter of public concern, the court asks "whether the 'main thrust' of the speech in question is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was." Mitchell, 468 F.3d at 1283 (citations omitted).

      If any of the speech is protected by the First Amendment, the Court next applies the Pickering balancing test, weighing the interests of plaintiff against the interest of the County. Brochu, 304 F.3d at 1157.   The Pickering balance is resolved by the Court where the facts underlying the balance are clear, although in some situations a factual dispute may need to be resolved by a jury before the court makes its determination.   Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1285 (11th Cir. 2005).   Relevant considerations include "whether the speech at issue impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes performance of the speaker's duties or interferes with the regular operation of the [public employer's] enterprise." Jackson, 405

F.3d at 1285 (citing <u>Morris v. Crow</u>, 117 F.3d 449, 457-58 (11th Cir. 1997)).   In the balancing process, the government has the burden of justifying the adverse employment action.   <u>Morales</u>, 848 F.2d at 1148 n.4.

The Amended Complaint identifies the speech at issue in this case and properly separates the categories of speech alleged to be within the ambit of the First Amendment.   The Court will address the categories separately, as it must.   <u>Goffer v. Marbury</u>, 956 F.2d 1045, 1050 (11th Cir. 1992).

**(1) In September, 2002, plaintiff reported to the County an environment of abuse and harassment along with a system of fear instituted by the County against the staff which violated county procedures, duplicated efforts and wasted taxpayer money due to inefficient bureaucracy akin to the federal government (Doc. #134, ¶ 5(a), (c); Doc. #363, pp. 1-3, 8-9).**

In mid-June, 2002, DeLony became the new Administrator of the Collier County Public Utilities Division.   In early August, 2002, Thampi received an annual evaluation which indicated he "exceeds expectations," although in the two prior years he had received "outstanding" evaluations.

On August 14, 2002, Thampi sent Jean Merritt ("Ms. Merritt"), then the interim Collier County Director of Human Resources, an e-mail (Doc. #168-4, p. 21) concerning "issues" he had with "the behavior and questionable management actions" by DeLony.   Thampi

reported that "Jim DeLony has been dismissive, abusive, and bullying along threatening behavior to employees in Public Utilities . . . ;" that morale was down throughout the division; that directors have not been willing to go to the County Manager (defendant James Mudd) to complain because they feel Mudd and DeLony are best friends and it would be used against the employees; that staff has seen "how abusive and threatening he [DeLony] has behaved to me, despite the fact that I tried to have a dialogue with him regarding project questions, especially when trying to explain and point out the right way to do it." Id. Thampi further reported that on August 5, 2002, DeLony stated, in front of Roy Anderson, Director of Public Utilities Engineering, "that he [DeLony] was going to run Utilities the way he wanted and that he could make it difficult for me [Thampi]." Thampi stated that this statement "is a threat and harassment." Thampi then reported that on August 13, 2002, he found that his Performance Evaluation had been "penciled in" for a downgrade based upon DeLony's directions to Anderson. Thampi concluded by stating that what was happening in the Public Utilities Division was "detrimental to the County" and "needs to be addressed now." Thampi requested an appointment with Ms. Merritt. Ms. Merritt's return e-mail suggested a meeting the next afternoon.

Ms. Merritt testified by deposition that Thampi came to see her to complain about his performance evaluation, about his supervisor Jim Delony, and about certain department practices.

Thampi wanted to see what recourse he had about his performance evaluation. Ms. Merritt told Thampi the performance evaluation was not grievable under county rules, but he could write a rebuttal which would be placed in his personnel file. Ms. Merritt also told Thampi that the grievance policy (referred to as a "Commitment to Fair Treatment" policy under county jargon) was available if he had concerns outside the performance evaluation process, and encouraged him to file such a grievance. Thampi did not do so at the time. (Deposition, pp. 10-15, 62-63.)

On August 15, 2002, Thampi wrote a memorandum to Anderson concerning his annual evaluation and the possibility of further downgrading. Thampi repeated his complaints about DeLony's management style and decisions, and set forth an eight point rebuttal to specific paragraphs of his evaluation. Thampi accused DeLony of unfairly targeting him for harassment because he had been outspoken against questionable management actions.

On September 24, 2002, Thampi was interviewed by the Administrator of the Admnistrative Services Division, Ms. Jo-Anne Varcoe-Larmer ("Ms. Varcoe-Larmer") in the course of an investigation into DeLony's management style. (Doc. #168-4, pp. 5-8.) In this interview Thampi asserted that Mr. DeLony's interpersonal and management style was abrupt, short tempered and abusive, and he was impossible to please. Thampi also enumerated the ways in which he felt DeLony micro-managed the department and employed methods Thampi felt were more appropriate to the military

and needlessly bureaucratic.  Thampi stated that he had told DeLony
that DeLony was no longer in the Army and that he had to earn
respect here, it is not automatic because of rank (id.).   The
interview reported that Thampi "tried to tell Jim that there are
plans and meetings in place to achieve the Master Plan through
proper channels.  But every time Mohan tries to explain, Jim just
dismisses him rudely.  Jim acts like Mohan is not relevant and does
not know what he is doing; and that Jim and others would be making
all decisions.  As a project manager, Mohan is a decision maker on
his projects from start to finish."  Id.

On September 26, 2002, Ms. Varcoe-Leamer filed a written
report of her investigation to County Manager Mudd and Deputy
County Manager Leo Ochs.  The report concluded that DeLony was not
in compliance with the County Code which required an employee's
conduct toward co-workers, supervisors, other staff and the public
to be courteous, positive and appropriate for the work situation.
The report recommended that DeLoney's supervisor take appropriate
action to rectify the situation immediately.

In addition to matters discussed below, plaintiff asserts that
he pointed out a number of places where money would be wasted by
procedures implemented by DeLony, who was simply creating work,
including the costs of the south water plant project.  Plaintiff
felt he had negotiated the least expensive deal, even though others
with the County disagreed with the assessment.  Plaintiff did not
believe the County needed to hire external lawyers and schedulers

with Change Order No. 2 being finalized, and was against the County bringing in outside counsel which required the County Board to make supplemental appropriations.  Plaintiff pointed out that action being taken and proposed action would jeopardize the SCRWTP project.

The Court concludes that the main thrust of this speech cannot fairly be considered as relating to matters of political, social, or other concern to the community within the meaning of the First Amendment.  <u>Garcetti</u> held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  <u>Garcetti</u>, 126 S. Ct. at 1960.  Speaking about the perceived waste was well within the scope of plaintiff's job responsibilities.  The speech concerning personality and management style differences, as well as an attempt on Thampi's part to defend the way in which he did his job, and was made pursuant to Thampi's official duties as project manager.  Having made the complaint about DeLoney's management style, Thampi then was interviewed during the resulting investigation.  Such speech is not within the scope of First Amendment protection, e.g., <u>Gilder-Lucas v. Elmore County Bd. of Educ.</u>, No. 05-16561, 2006 WL 1736833 (11th Cir. June 26, 2006)(responding to employer's questionnaire after voicing complaint was not within protection of First Amendment). Additionally, "[a]n employee's quotidian, work-a-day grievances are

not constitutionally protected. . ."  Mitchell, 468 F.3d at 1284 n.17.  Nothing in either component of plaintiff's speech rose the a constitutional level.  Therefore summary judgment will be entered in favor of the County as to this speech.

**(2) Plaintiff and fourteen[5] other County employees reported managerial abuses by DeLony to County officials assigned to investigate DeLony (Doc. #135, ¶ 5(b), (c); Doc. #363, pp. 3-8).**

The record establishes a thorough investigation of DeLony and includes the interview notes of Ms. Varcoe-Larmer and a resulting report from Ms. Varcoe-Larmer to Jim Mudd and Leo Ochs.  (Doc. #168-4, pp. 10-13.)  In this report Ms. Varcoe-Larmer concluded that DeLony was not in compliance with various aspects of the County Code and recommended was that "[Mr.] DeLony's supervisor take the appropriate action to rectify the situation immediately." The interview notes indicate that other employees expressed concerns with DeLony's management style as it related to them individually and their ability to perform and enjoy their job. Like Thampi's concerns, these concerns were purely job related and as such were not a matter of public concern.  Thampi did not receive a copy of the report until after he was terminated (Doc. #217-3, p. 96) and did not read the fourteen statements until after the Complaint was filed (Doc. #217-3, pp. 214-15, 229).

---

[5]The number of other employees involved in submitting statements to the County during its investigation is disputed, but this dispute is not material to any issue before the Court.

The Court concludes that plaintiff does not have standing to assert rights based on the speech of others, particularly since he did not even know what the speech was until after his termination. Thus, the fact that other employees were fearful of losing their jobs, or had low morale, or cried because of DeLony, or were subjected to military-style procedures, or suffered a loss of trust in DeLony, or were not treated with dignity do not establish a violation of <u>plaintiff's</u> First Amendment rights.

The Court further finds that plaintiff's speech in this regard cannot fairly be considered as relating to a matter of political, social, or other concern to the community. Submission of the information to the investigating official was pursuant to plaintiff's responsibilities as project manager and the other persons' responsibilities as employees. None of the information is protected by the First Amendment. Therefore, summary judgment will be entered in favor of the County as to this speech.

**(3) Plaintiff criticized the County, Mudd, and DeLony concerning the investigation of DeLony conducted by the County (Doc. #134, ¶ 5(d); Doc. #363, p. 9).**

In deposition plaintiff testified that this paragraph referred to the pattern of behavior towards him since DeLony arrived and plaintiff's various memoranda and e-mails sent to the County or its employees. (Doc. #249-12, pp. 207-09; Doc. #306-4, p. 223.) These e-mails dealt with rising costs with the South Collier water

treatment facility, and were sent both before and after plaintiff left County employment.  For the reason discussed above, the Court concludes that the speech made before plaintiff left the County was in furtherance of plaintiff's official employment responsibilities, that the main thrust cannot fairly be considered as relating to matters of political, social, or other concern to the community, and is not protected by the First Amendment.  As to the subsequent speech, there is no assertion that plaintiff suffered any retaliation by defendants for that speech, even if protected by the First Amendment.

**(4) In June, 2003, plaintiff warned defendants about a potential liability of over $3 million if the County did not resolve disputes with independent contractors concerning the expansion of the South Collier Regional Water Treatment Plan, and about the potential loss of $300,000 in grant money to fund county projects due to County actions and project delays (Doc. #134, ¶ 5(e); Doc. #363, pp. 2, 9).**

The record establishes this speech occurred in a series of e-mails between May 27, 2003 and June 2, 2003 (Doc. #168-4, pp. 23-28), and a June 2, 2003, memorandum from Thampi to Messrs. DeLony, Anderson, and Mullin of the Public Utilities Department, Messrs. Palmer and Pettit of the County Attorney's Office, and Messrs. Carnell and Wood in Purchasing (Doc. #168-4, pp. 29-32).  In summary, the e-mails describe decisions made by Thampi's

supervisors about the way certain aspects of his project were to be handled; that Thampi disagreed with these decisions; and that Thampi's protests were overridden by higher authority.

A May 29, 2003 e-mail (Doc. #168-4, p. 26) to Messrs. Anderson and Mullin confirms Thampi's recollection of events at a meeting that day in which Thampi was told certain things were going to happen on his project and he disagreed with those decisions.  When Thampi reported his differing opinions to Messrs. Anderson and Mullin, he was told he was disruptive, not following directives, could be removed from the project, and could be terminated (id.). Thampi firmly believed that the way he wished to do things would save over $300,000 in comparison to the way his supervisors were planning to handle the project (id.).

Thampi brought this occurrence to the attention of Mudd in a May 29, 2003 e-mail, and insinuated he believed that perhaps the less-than-positive reception was due to his participation in DeLony's investigation.  Mudd's May 29, 2003 response (Doc. #168-3, p. 25) assured Thampi that DeLony had not seen the individual interviews from the investigation.  Mudd also asked Thampi to "sit and talk to Roy Anderson about [his] concerns" because Anderson could explain why they were choosing the actions and procedures they were employing.

In a June 2, 2003 e-mail, Thampi reiterated the reasons why the County's favored approach to the project was the wrong one, how his approach would save the County money, and how wrong Messrs.

DeLony and Mullin were in bypassing his authority as Project Manager. Plaintiff also stated that he believed that as a direct result of his disagreement with the County's approach he had been "unfairly treated, harassed, and threats made to terminate [him]." Plaintiff's June 2, 2003 Memorandum detailed Thampi's reasoning for his approach and behind his concerns about the County's approach.

The Court finds that the main thrust of Thampi's speech was pursuant to his duties as the project manager and did not concern matters of public concern within the meaning of the First Amendment. As he repeatedly stated, he was the project manager and he felt very strongly that his word should have been definitive. These concerns were primarily job related and as such not a matter of public concern. The Court concludes this speech cannot fairly be considered as relating to a matter of political, social, or other concern to the community. Therefore, summary judgment will be entered in favor of the County as to this speech.

**(5) In December, 2003, plaintiff reported a waste of taxpayer dollars and management abuses by all three defendants to the Collier County Clerk of Court and provided a report in early 2004 (Doc. #134, ¶ 5(f); Doc. #363, p. 10).**

The record reflects that in December, 2003, plaintiff sent a two page, anonymous memorandum to the Clerk of Court for Collier County, one of whose function is county auditor. (Doc. #262-2, Exh. B.) An introductory paragraph discussed the North Wastewater

Plant, and stated that projects that were pushed through "turned out to be expensive and unnecessary duds costing County taxpayers millions of dollars at the expense of JM's self-glorification." The memorandum then listed fifteen points of questionable County activities.

The Court finds that the main thrust of Thampi's speech was pursuant to his duties as the project manager and did not concern matters of public concern within the meaning of the First Amendment. The Court concludes this speech cannot fairly be considered as relating to a matter of political, social, or other concern to the community. Therefore, summary judgment will be entered in favor of the County as to this speech.

**(6) In February, 2004, plaintiff reported improprieties to the County and James Mudd in the ranking process for awarding county contracts and project delays with potential lost savings of $1.4 million (Doc. #134, ¶ 5(g); Doc. #363, p. 10).**

The record establishes that Thampi submitted a Memorandum to Ms. Merritt to his personnel file dated February 23, 3004 (Doc. #168-4, pp. 17-21; 38-41), three days after the date of the termination Behavior Action Plan (BAP). This memorandum was the only memorandum in the record dated February 2004. This memorandum is clearly meant to be a defense of Thampi's job performance, and not meant to inform Mudd about improprieties in the ranking process for awarding county projects, project delays, or a potential loss

savings of $1.4 million dollars.   The memorandum illustrated the actions on projects Thampi was managing that were indicia of "the continuing attempts to harass and discriminate against [him]." (Doc. #168-4, p. 17.)   In this memorandum Thampi argued that Paul Mattausch was trying to make it look like Thampi didn't know his job; stated his name is allegedly not to be on the plaque for the SCRWTP 8-MGD RO expansion; enumerated the ways in which he saved County taxpayers "millions of dollars"; and listed examples of his "exemplary project management skills."   (Id.)

The Court concludes this speech can cannot fairly be considered as relating to a matter of political, social, or other concern to the community.   Thampi's rebuttal to the BAP was primarily a matter of personal interest, not of public interest. Therefore, summary judgment will be entered in favor of the County as to this speech.

**(7) Plaintiff consistently criticized the policies and actions of all three defendants as to issues of fiscal responsibility, affordable housing policy, and managerial abuse by county administrators (Doc. #134, ¶ 5(h); Doc. #363, p. 11).**

The affordable housing policy is the only new matter alleged in this section, and the other matters have been resolved above. The only reference to affordable housing in this whole case arose during the deposition of Roy B. Anderson, the director of the Engineering Department for Collier County.   Anderson was asked his

opinion of Thampi, and he responded that Thampi was an enthusiastic project manager, but that this was a double-edged sword because Thampi would sometimes act to the detriment of the County.  When asked for an example of such conduct, Anderson stated that in the winter of 2002 Thampi was responsible for the water and wastewater master plan preparation which delineated the County's projects for the next twenty years.  One of the final steps in developing the plan was to get input from the Development Services Advisory Committee, comprised of builders and developers in the county. When the report was presented to this committee, Thampi got involved in an intense discussion with the committee chairman on the question of affordable housing in the county because the Engineering Department was proposing an impact fee increase for new houses.  The developers were arguing that the increase was going to be detrimental to affordable housing in the county.  Thampi viewed the chairman as having a niche in building larger-scale homes for the wealthy, and challenged the chairman on the veracity of his affordable housing position in what Anderson perceived to be a negative way, almost trying to embarrass the chairman.  The Engineering Department was concerned because it did not want to alienate the chairman when the presentation of the basic master plan had been going well.  The next day Anderson told Thampi his conduct reflected very poor judgment, that it was in the county's interest to get approval of the plan, the county did so in order to go forward with their capital projects, and this side issue of

affordable housing threatened to derail the entire master plan. (Doc. #57, pp. 14-15.)

The Court finds that the main thrust of Thampi's speech was pursuant to his official duties and did not concern matters of public concern within the meaning of the First Amendment. It is clear from Anderson's testimony that Thampi was acting pursuant to his official duties for the county in the presentation to the committee. The Court concludes this speech cannot fairly be considered as relating to a matter of political, social, or other concern to the community. Therefore, summary judgment will be entered in favor of the County as to this speech.

Having examined in detail each of the instances of speech alleged by plaintiff, the Court concludes that none are protected by the First Amendment.[6]

## V.

Defendants Mudd and DeLony assert that they are entitled to summary judgment based upon qualified immunity. (Docs. #303, 305.) Qualified immunity principles were summarized in Darymple v. Reno, 334 F.3d at 993-995 (11th Cir. 2003), cert. denied 541 U.S. 935

---

[6]Collier County also seeks summary judgment on the basis that it had a sufficient and independent basis for plaintiff's termination. Collier County asserts that the record shows beyond any reasonable dispute that Thampi was insubordinate and disruptive, and that his termination was justified on this basis. Defendants point to numerous affidavits, depositions, and Thampi's performance ratings, which consistently noted room for improvement regarding his interpersonal skills. Having carefully reviewed the record, the Court concludes that there are material issues of disputed facts which preclude summary judgment on this basis.

(2004)(internal citations and quotations omitted), and remain the law of this circuit.  Qualified immunity protects from suit all but the plainly incompetent or one who is knowingly violating the federal law.   To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority.   Once the government official has established that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.   The Supreme Court has set forth a two part analysis for determining whether qualified immunity is appropriate. The court must first ask the threshold question whether the facts show that the government official's conduct violated a constitutional right. If so, the court must determine whether that right was clearly established at the time of the violation. Dalrymple, 334 F.3d at 993-995.

Here, there is no dispute that Mudd and DeLony were acting within the scope of their discretionary authority at all relevant times.  For the reasons set forth in detail above, the Court finds that the undisputed facts do not establish a violation of plaintiff's First Amendment rights.   Therefore, defendant's are entitled to qualified immunity.

Accordingly, it is now

**ORDERED ADJUDGED:**

1.   Defendant Collier County's Motion  for Summary Judgment (Doc. #168) is **GRANTED.**

2.   Plaintiff Mohan Thampi's Motions for Partial Summary Judgment (Docs. #183 and #271) are **DENIED.**

3   Defendant James Delony's Motion for Summary Judgment on Amended Complaint (Doc. #303) is **GRANTED.**

4.   Defendant James V. Mudd's Motion for Summary Judgment (Doc. #305) is **GRANTED.**

5.   The Clerk of Court shall enter judgment in favor of defendants Collier County Board of Commissioners, James Mudd, and James DeLony and against plaintiff Mohan Thampi, who shall take nothing.

6.   The Clerk of the Court shall terminate the remaining pending motions (Docs. #316, #317) as moot and close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __5th__ day of March, 2007.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record